Clerk's Office
Filed Date:  3/22/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VINCENT ELLIS,

                Petitioner,

   -against-

WILLIAM LEE, Superintendent,
 Eastern Correctional Facility,

                Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-6834 (CBA)

**AMON, United States District Judge:**

      Petitioner Vincent Ellis brings this counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF Docket Entry ("D.E.") # 1.)  Ellis was convicted in Supreme Court, Queens County, following a jury trial, of Burglary in the First Degree (Penal Law § 140.30(4)), Burglary in the Second Degree (Penal Law § 140.25(2)), Robbery in the First Degree (Penal Law § 160.15(4)), Robbery in the Second Degree (Penal Law § 160.10(1)), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(3)), and Criminal Possession of Stolen Property in the Fifth Degree (Penal Law § 165.40).[1]  Ellis argues that his trial counsel was constitutionally ineffective in: (i) failing to object to several statements that the prosecutor made during cross-examination of Ellis and during summation; (ii) failing to prepare Ellis to testify; (iii) failing to share material evidence with Ellis; and (iv) failing to convey the advisability of accepting a plea agreement.  Ellis also argues that the manner in which the state court determined his post-conviction relief motion deprived him of due process of law.  For the reasons set forth below, Ellis's petition is denied.

---

[1] The jury acquitted Ellis and his co-defendant of Criminal Possession of a Weapon in the Second Degree and Unauthorized Possession of a Radio Device.

1

## BACKGROUND

I. **Ellis's Conviction at Trial**

Ellis complains of the prosecution having exceeded the bounds of certain pre-trial evidentiary rulings, and of defense counsel's failure to object to the prosecutor's allegedly out-of-bounds statements. Accordingly, a recitation of the procedural history of these rulings, as well as the overwhelming evidence of guilt adduced at trial, is warranted.

A. The People's Case at Trial

The evidence at trial established that Ellis and his co-defendant were caught in the act of burgling an apartment in Queens, which was then occupied by Casin McLean. McLean was romantically involved with Marcus Maragh, who was staying at the apartment on the night of the robbery with his two sons. On July 20, 2009, around 1:45 a.m., officers responded to a burglary in progress at the Queens apartment. Officer Braumann got out of his car and saw the woman who described herself as the 911 caller, Selina Ali, standing in her pajamas on the sidewalk. She told him that she lived in the basement apartment and had heard a loud male voice in the first floor apartment say, "get your hands up, put your hands up in the air," and heard movement in the back of the apartment and a male voice saying "just tie us up, but please don't hurt my family." Officers Braumann and Kurian walked up the driveway to the front door followed by Officer Denofrio. As they went up the stairs to the door, McLean ran out, with her hands tied behind her back, and yelled "they're inside and they have guns." The officers drew their guns and went into the apartment. There, they found Ellis, his co-defendant, Maragh, and Maragh's two teenage sons. Maragh was found with his hands taped; his sons were found restrained with zip-ties. Ellis and his co-defendant were arrested on the scene near the back door of the apartment. Police found latex gloves and firearms near Ellis and his co-defendant. A search of the apartment also revealed multiple

firearms, a bullet proof vest, gloves, ammunition, cut zip ties, a police scanner, and $72,000 in cash. The large sum of cash was in a bag which Maragh had arrived with at the apartment while the burglary was in progress. Maragh testified it was the earnings from his music promotion enterprise, and that defendants said they "came for the concert money." Ellis was arrested on the scene with $4,500 and pieces of jewelry in his pockets. A forensic examination later determined that Ellis's and his co-defendant's DNA were present on gloves recovered from the scene, although there was insufficient DNA on the weapons to be tested.

According to McLean's and Maragh's trial testimony, Ellis and his co-defendant attacked McLean when she arrived at the apartment and forced their way inside. Both were wearing masks and gloves. Ellis and his co-defendant restrained McLean and continued to threaten her with violence. At some point, Maragh then returned to the apartment and was ambushed by the defendants, who attempted to restrain him. After some resistance, the defendants grabbed Maragh's children and threatened them with guns until Maragh allowed himself to be bound with tape. Both defendants proceeded to pocket cash and jewelry from the apartment. McLean identified two of the guns recovered from the apartment as those wielded by defendants. The sound of a police scanner or radio chatter provided a distraction that allowed McLean to escape out the front door. Ellis and his co-defendant panicked: they stripped their masks and gloves, tried to cover some evidence, and attempted to exit through the back of the home when they were apprehended.

B. The Defense's Case at Trial

Ellis testified on his own behalf and claimed that he and his co-defendant were framed by the complainants. According to Ellis, he and Maragh had a drug dealing relationship and Maragh owed Ellis marijuana that Ellis had purchased but not yet received. When confronted on the street

3

about the delayed exchange, Maragh invited Ellis and his co-defendant to the apartment to discuss payment. He offered various firearms in lieu of the drugs, which defendants examined with gloves or socks but rejected. Jewelry was also offered as payment or collateral until the drug transfer was complete. When police arrived at the apartment, Maragh ushered defendants into a back room. Defendants eventually tried to leave the apartment but were stopped by the police before they could exit. Ellis denied bringing guns, gloves, masks, or zip ties into the apartment. His counsel also pointed out that Maragh's children did not testify, that Maragh was likely a dangerous drug dealer, and that no masks were recovered from the crime scene.

C. The Pre-Trial Motions and Failures to Object

Prior to trial, a hearing was held to determine whether Ellis's prior convictions could be used to impeach him if he elected to testify. The prosecution moved to cross-examine him at trial on his two prior convictions, including a 1998 felony conviction of third degree attempted criminal possession of a weapon and a 2005 misdemeanor conviction for seventh degree criminal possession of a controlled substance.[2]

Concerning the 2005 controlled-substance conviction, the prosecutor asked to go into the underlying facts of the case—namely, that Ellis had sold a controlled substance to an undercover officer in exchange for money on June 18, 2004, in Brooklyn. Defense counsel argued that the sale was never proven, that the counterparty was not an undercover officer, and that the crime of possession alone reflected addiction not moral turpitude. D.E. # 9 ("Record" or "R.") at 258[3].) The trial court ruled that the "People . . . will be allowed to inquire as to whether or not he was

---

[2] The defense also moved to exclude inquiry into the stolen vehicle that Ellis arrived at the burglary in, as that was uncharged conduct. The trial judge granted the defense motion.

[3] References to the pagination of the Record correspond to the PDF pagination of the wholly compiled submissions at D.E. # 9.

4

convicted of an A misdemeanor, that it was for a controlled substance, but not go into the underlying facts of that offense." (Id. 263.)

Concerning the 1998 conviction of attempted criminal possession of a weapon in the third degree, the prosecutor sought to ask Ellis about the underlying facts of that case; namely, that on March 6, 1998, in Queens County, Ellis possessed an illegal, defaced, fully loaded firearm. (Id. 253.) Defense counsel argued that Ellis was only eighteen of the time of conviction, that the prejudicial effect of the underlying facts outweighed their probative value, and that the weapon was not actually found on Ellis's person in connection with this prior conviction. After a brief colloquy, the trial judge ruled as to the 1998 weapon conviction that the "People will be allowed to inquire as to whether or not the defendant had been convicted of a felony." (Id. 263.) Before ruling as to whether inquiry into the underlying facts would be permitted, the trial judge requested that the People produce the complaint or report that indicated whether the possession was actual or constructive. Accordingly, the trial judge "reserve[ed] decision as to how the People will be allowed to inquire as to the underlying facts as to the circumstances of that 4/29/98 disposition involving defendant Ellis." (Id. 263–64.) The parties' briefing is not clear as to whether the trial judge ultimately made a such a ruling. Without citation, Ellis asserts that "the trial court did not permit the prosecution to inquire about the underlying facts." (D.E. # 1 at 5.) The Respondent asserts that the judge reserved decision, but also implies that the judge ruled that the People could not inquire into the underlying facts of either conviction. (D.E. # 8 at 31, 33). The Record reveals that trial counsel for Ellis and the People were similarly unsure. When defense counsel moved for a mistrial on the basis that the prosecutor had improperly inquired into the underlying facts of the gun conviction, the parties argued about whether the prosecutor had actually done so or whether Ellis opened the door. The trial judge noted that his recollection was that he had reserved decision

5

as to whether the prosecutor could inquire into the underlying facts of the gun charge. (R. 286.) The prosecutor then informed the court that, "as far as the [1998 conviction], you had ruled, your Honor, after, hearing the information in the criminal complaint that I may ask was the defendant convicted of a felony, attempted [criminal possession of a weapon], no underlying facts." (Id. 287.) The trial judge then denied the motion for a mistrial.

Turning to the allegedly improper statements made at trial. As to the gun conviction, on cross-examination of Ellis, the prosecutor asked:

> Q: Okay, Mr. Ellis, you were convicted -- were you not -- here in Queens County Supreme Court of a felony, attempted criminal possession of a loaded firearm in the third degree; correct?
> A: Correct
> Q: And that conviction, that's a violent felony; right?
> A: No, ma'am.
> Q: It's not a violent felony offense?
> A: It's what you call it, non-violent

R. 488.

Following Ellis's statement that he does not handle other peoples' guns without gloves, the prosecutor asked whether Ellis used gloves to handle the gun in 1998. (Id. 489.) Additionally, when the prosecutor asked Ellis whether he pleaded guilty to the criminal possession of a "loaded firearm" because he was in fact guilty, Ellis responded that he was "deceived" by his former attorney. (Id. 2676.) This led to a lengthier colloquy wherein the prosecutor went into the underlying facts surrounding Ellis's entry of the guilty plea (e.g., was he sworn in, was it in open court, etc.). During this exchange, the prosecutor referenced several times that the conviction was for a firearm possession. (See e.g., id. 2678 ("[A]s part of your guilty plea did you or did you not have to admit on the record with a court reporter there just like this one that you attempted to possess a loaded firearm?").)

6

During cross-examination, the prosecutor also addressed Ellis's prior drug conviction. (See id. 2683 ("Q: [Y]ou were convicted on June 2, 2005, in Kings County Supreme Court of criminal possession of a controlled substance. That's drugs; right? A: No, I had two charges of distribution.").) After Ellis said that he also entered that guilty plea because his former attorney deceived him, the prosecutor again asked questions regarding the circumstances of Ellis's plea. During this colloquy, as with that concerning the gun charge, the prosecutor elicited testimony from Ellis that by entering these pleas, he effectively lied in court.

Ellis also complains of the prosecutor's remarks at summation. The allegedly improper statements included: speculating as to what a witnesses would have said absent testimony; personally vouching for the credibility of the People's witness; appealing to a "safe streets" argument; and repeatedly telling the jury that the defense was "ridiculous," "laughable," "preposterous," and "insulting." (D.E. # 1 at 22; R. 2836.)

## II. Appellate and Post-Conviction Procedural History

Ellis was sentenced on April 26, 2011 to an aggregate term of imprisonment of nineteen years, followed by five years of Post-Release Supervision. He prosecuted an appeal to the New York Supreme Court, Appellate Division, Second Department, where he raised two arguments: (1) that he was deprived of due process of law and a fundamentally fair trial where the prosecutor repeatedly violated the pre-trial orders during cross-examination and made improper comments during summation; and (2) that his sentence was excessive. (D.E. # 1 at 24.) The Second Department affirmed the judgment and sentence on April 27, 2016. (See id.; People v. Ellis, 138 A.D.3d 1136 (2d Dept. 2016).) The New York Court of Appeals denied discretionary review on July 27, 2016. (D.E. # 1 at 24; People v. Ellis, 27 N.Y.3d 1150 (2016) (Pigott, J.).)

7

On July 26, 2017, Ellis filed a motion pursuant to New York Criminal Procedure Law § 440.10 seeking post-conviction relief. In the motion, he raised the arguments pressed in the instant petition. Specifically, he alleged that he received ineffective assistance of counsel where his trial attorney (1) failed to make proper objections when the prosecution violated the pre-trial orders during cross-examination; (2) failed to object to prosecutorial misconduct by the District Attorney during summation; (3) failed to consult with Ellis, review the evidence with him, and permit him to participate in making decisions that were fundamental to the defense; (4) failed to prepare Ellis to testify in his own defense, and otherwise properly advise him concerning his right to testify; and (5) guaranteed Ellis victory at trial. (D.E. # 1 at 25.) In support of the motion, Ellis filed an affidavit wherein he asserted that (a) he would have accepted a plea but for his counsel having guaranteed victory at trial; (b) his attorney never reviewed any evidence, discovery, or defense strategy with him before trial; and (c) his attorney failed to prepare him whatsoever to testify. (See id. at 25–27.) The People opposed the motion and filed an affidavit of John Scarpa, Ellis's trial counsel, wherein Scarpa expressly and unequivocally denied each of Ellis's allegations. (See id. at 27.) In a two-paragraph written decision dated October 18, 2017, the Queens County Supreme Court denied Ellis's motion. (Id.; R. 544.)

On November 13, 2017, Ellis timely petitioned the Appellate Division, Second Department for permission to appeal from the denial of the post-conviction relief motion, arguing that the brief decision entered without an evidentiary hearing violated his right to due drocess. When Ellis filed the instant habeas petition, that motion was still pending. It has since been decided against him. People v. Ellis., No. 2017-11815, 2454/09, 2018 WL 1043358 (N.Y. App. Div. Feb. 26, 2018).

8

**STANDARD OF REVIEW**

**I.     AEDPA Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a State court may petition a federal court for "a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner seeks review of a claim "adjudicated on the merits in State court proceedings," AEDPA "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus," Johnson v. Williams, 568 U.S. 289, 298 (2013) (internal quotation omitted), and "imposes a highly deferential" standard of review, Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)); see also 28 U.S.C. § 2254(d).

A district court applying AEDPA deference may grant an application for a writ of habeas corpus only where the state adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Evans v. Fischer, 712 F.3d 125, 132–33 (2d Cir. 2013). "'[C]learly established Federal law' refers to holdings, and not dicta, of cases decided by the Supreme Court, as opposed to lower federal courts." Fischer, 712 F.3d at 133 (citing Taylor, 529 U.S. at 412). A state court's ruling on the merits is "contrary to" a clearly established Supreme Court holding if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Taylor, 529 U.S. at 412–13. An "unreasonable application"

9

of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "An application of law is 'unreasonable' only if it involves '[s]ome increment of incorrectness beyond error.'" Fischer, 712 F.3d at 133 (alteration in original) (quoting Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002)); see also Harrington v. Richter, 562 U.S. 86, 101 (2011) (holding that if "'fairminded jurists could disagree' on the correctness of the state court's decision," that decision is not unreasonable (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (noting that whether a state court's determination was unreasonable is "a substantially higher threshold" than whether that determination was incorrect).

## II. Standards for Evaluating § 2254 Petitions Based on Strickland

The clearly established federal standard applicable to claims alleging ineffective assistance of counsel is provided by Strickland v. Washington, 466 U.S. 668, 687 (1984). Taylor, 529 U.S. at 391. Under Strickland, to establish a deprivation of the Sixth Amendment right to effective assistance of counsel, a petitioner must satisfy both the "performance" and "prejudice" prongs of the test. Specifically, the petitioner must show that (1) "counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Rivas v. Fischer, 780 F.3d 529, 546-47 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 687).

Under the performance prong, a court determines whether "counsel's representation fell below an objective standard of reasonableness," indulging "a strong presumption that counsel's

10

conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 688–89.  A court "must bear in mind both that counsel 'has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process' and that counsel must have 'wide latitude' in making tactical decisions." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688–89) (internal citation omitted).  Although actions or omissions that may be considered sound strategy will not violate the performance prong, "ineffective assistance may be found where counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Brown v. United States, 167 F.3d 109, 110 (2d Cir. 1999) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  Finally, to satisfy the prejudice prong, petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (quoting Taylor, 529 U.S. at 391).  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." Rivas, 780 F.3d at 550 (quoting Strickland, 466 U.S. at 694).

As earlier noted, on top of the "weighty[] burden" that the Strickland test itself places on a petitioner, Hemstreet v. Greiner, 491 F.3d 84, 89-90 (2d Cir. 2007), in order to "establish eligibility for habeas relief under AEDPA's deferential standard, a [petitioner] must demonstrate that the [state court's] application of Strickland was not merely incorrect, but objectively unreasonable." Id. (internal quotation marks omitted).  Indeed, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult [because] [t]he standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Premo v. Moore, 562 U.S. 115, 122 (2011) (internal quotation marks and citations omitted).

11

**DISCUSSION**

**I.        Ellis's Ineffective Assistance of Counsel Claims**

Ellis argues that: (1) the state court's decision rejecting his ineffective assistance of counsel claim was contrary to Strickland; and (2) the state court unreasonably applied Strickland to his case. (D.E. # 1 at 29.) Respondent persuasively argues that the state court's decision (1) was not contrary to Strickland, and (2) was not an erroneous, let alone objectively unreasonable, application of Strickland.

   A.   The Decision Was Not "Contrary To" Strickland

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). Ellis has failed to make any showing overcoming this presumption. Ellis repeatedly emphasizes that the state court decision was terse. This alone, however, does not rebut the presumption. The Supreme Court has held that "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. at 98. Additionally, "[a]voiding the[] pitfalls [of rendering a state court judgment contrary to clearly established law] does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis original).

Because the decision was on the merits and not contrary to clearly established law, the petition may only be granted if the state court decision involved an unreasonable application of

12

clearly established law or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### B. Counsel's Failure to Object to Statements at Cross-Examination and Summation

Ellis's argument that the state court unreasonably denied his ineffective assistance of counsel claim where his counsel failed to object to the prosecutor's conduct at cross examination and summation is meritless. Ellis is not entitled to relief because has not established that "there could be no reasonable dispute" as to whether the state court's decision concerning his trial counsel's performance was in error. Woods v. Donald, 575 U.S. 312, 316 (2015).

The "more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Harrington, 562 U.S. at 101. Because "[t]he Strickland standard is a general one, [] the range of reasonable applications is substantial." Id. at 105. Moreover, "while in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." Id. at 111 (internal quotations and citation omitted). Defense counsel's overall performance at Ellis's trial indicated such advocacy. He offered compelling opening and closing remarks, vigorously cross examined the People's witnesses, made multiple objections to the prosecutor's conduct both during cross-examination and summation, and moved for a mistrial based on that alleged misconduct at cross-examination and summation.

In assessing a Strickland claim, courts "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Harrington, 562 U.S. at 109 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of

13

others reflects trial tactics rather than sheer neglect." (internal quotations omitted)). In the context of counsel's choice not to raise an objection, courts have routinely held that such decisions "are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." United States v. Cohen, 427 F.3d 164, 170–171 (2d Cir. 2005) (internal quotation marks and citations omitted); Alleyne v. Racette, No. 15-CV-1915 (SFJ), 2020 WL 2797521, at *13 (E.D.N.Y. May 28, 2020) (same); Pham v. Kirkpatrick, 209 F. Supp. 3d 497, 507 (N.D.N.Y. 2016), aff'd, 711 F. App'x 67 (2d Cir. 2018) (same); Mazique v. Ercole, No. 06–CV–1723(NGG), 2008 WL 2884370, *9 (E.D.N.Y. July 23, 2008) ("Objections, particularly during a prosecutor's summation, are generally considered strategic in nature and therefore are not generally grounds for federal habeas relief." (internal quotation marks omitted)).

As the record and Ellis's own statement of facts show, trial counsel made numerous objections throughout cross-examination and summation. Indeed, trial counsel objected at summation to much of the very prosecutorial conduct Ellis now complains of: trial counsel objected to the prosecutor's testimonial speculation (R. 2832, 2836, 2852), "safe streets" argument (R. 2842), and vouching for witnesses (R. 2847). Additionally, trial counsel made objections at cross-examination, though not specifically to the prosecutor's alleged violations of the pre-trial rulings. Ellis's argument that counsel was nevertheless constitutionally deficient in failing to object to every single allegedly improper comment or question of the prosecutor during cross-examination or summation is without merit. Where counsel made multiple objections that were overruled at both cross-examination and summation, the decision to not continue objecting was a valid strategic decision, not the product of neglect. See Hughes v. Sheahan, 312 F. Supp. 3d 306, 322 (N.D.N.Y. 2018) (noting "attorney might reasonably choose not to object to some leading questions [so as] not to appear obstructionist and thus offend the jury" (internal quotation marks

14

omitted)). Moreover, much of the prosecutor's questioning at cross-examination that Ellis now faults trial counsel for failing to object to was not in violation of the trial court's ruling. Specifically, Ellis complains of the prosecutor's lines of questions regarding the underlying facts of how Ellis entered his pleas. But Ellis opened the door to those lines of questions and, in any event, questions regarding the underlying facts of the plea would not violate any pretrial ruling prohibiting questions as to the "underlying facts of the offense." (R. 263.)

Accordingly, as to the performance prong, Ellis has failed to rebut the strong presumption that his counsel's decision not to object was a trial strategy, and he has failed to show that there are exceptional circumstances here warranting a challenge to that decision. It was not objectively unreasonable to determine that trial counsel's decisions were supported by valid tactical considerations. Certainly, Ellis has at least failed to show that the state court's determination rejecting his ineffective assistance claim was wrong by an increment beyond error.

Moreover, as the state court's decision on direct appeal made plain, the prosecutor's alleged misconduct at cross-examination was "not unduly prejudicial as a whole" and the improper comments during summation did "not deprive defendant of a fair trial." People v. Ellis, 138 A.D.3d 1136 (2d Dept. 2016). As to Strickland's prejudice prong, I conclude that the allegations of ineffective assistance of counsel raised in this petition are insufficient to show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. This is especially true considering "there was ample basis for the [state court] to think any real possibility of [Ellis] being acquitted was eclipsed by the remaining evidence pointing to guilt." Harrington, 562 U.S. at 113; see also Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus."). At trial, the

15

victims gave consistent accounts of the armed robbery of the apartment at which they stayed. Both identified Ellis and his co-defendant as the individuals who tied them up, held them at gunpoint, and robbed them. DNA evidence and physical evidence from the crime scene supported their testimony. Moreover, the testimony of Selina Ali, the downstairs resident who heard the robbery and called 911, corroborated the victims' testimony and undermined the defense. Finally, police arrested Ellis and his co-defendant at the crime scene, and Ellis was found near the rear exit with cash and jewels.

### C. Ellis's Remaining Ineffective Counsel Claims

Ellis further argues that his trial counsel was constitutionally deficient in (1) failing to consult with Ellis, review the evidence with him, and permit him to participate in making decisions that were fundamental to the defense; (2) failing to prepare Ellis to testify in his own defense, and otherwise properly advise him concerning his right to testify; and (3) guaranteeing Ellis that he would prevail at trial. Ellis presented these arguments in his state post-conviction motion, along with a supporting affidavit. The state opposed the motion and submitted an affidavit from Ellis's trial counsel that expressly refuted each of Ellis's allegations. Upon review of the factual record, the state court rejected Ellis's claims, determining that "the prosecution have annexed an affidavit from the defendant's trial counsel denying the defendant's allegations of ineffective assistance of counsel and affirming that he adequately informed through all stages of representation." D.E. # 1 at 27. These claims do not warrant federal habeas relief as the state court adjudication neither resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), nor was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

16

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). While "[a] factual determination may be unreasonable if it cannot reasonably be reconciled with the record before the state court", Millington v. Lee, No. 11 CIV. 499 LGS DCF, 2015 WL 1402133, at *10 (S.D.N.Y. Mar. 26, 2015) (internal quotation marks omitted), "[a] state court's findings of fact will be upheld unless objectively unreasonable in light of the evidence presented in the state court proceeding", Burkhardt v. Bradt, No. 12-CV-1919(ADS), 2016 WL 7017363, at *6 (E.D.N.Y. Dec. 1, 2016) (internal quotation marks omitted). In short, where the state court state has already rejected Ellis's claims based on its assessment of the factual record, Ellis "bears a heavy burden in seeking collateral relief in this court." Mohsin v. Ebert, 626 F. Supp. 2d 280, 302 (E.D.N.Y. 2009).

Ellis has not offered any further evidence in support of claims that was not already considered by the state court and argued in his post-conviction proceeding. Despite the fact that Ellis's allegations were presented in a sworn affidavit, the state court resolved the factual dispute against him based on the overall record and competing affidavit of trial counsel. Ellis has failed to show that the state court's determination of the factual record was unreasonable, or that—based on those as-determined facts—the state court's decision that he received effective assistance of counsel was objectively unreasonable.

## II. Ellis's Due Process Claims

Finally, Ellis argues that the manner in which the state court denied his post-conviction motion denied him due process of law where, despite his sworn affidavit, the state court issued a cursory opinion without holding an evidentiary hearing. Ellis's claim that the trial court violated his due process rights by failing to hold an evidentiary hearing during post-conviction proceedings

17

to resolve his ineffective-assistance claims is not cognizable in a federal habeas proceeding.  Word v. Lord, 648 F.3d 129, 131 n. 5, 132 (2d Cir. 2011).  Accordingly, Ellis is not entitled to relief on this claim.

## CONCLUSION

For the reasons set forth above, Ellis's petition is denied.  Because Ellis has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue.  28 U.S.C. § 2253(c).  The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: March 22, 2021
      Brooklyn, New York                                   /s/ Carol Bagley Amon
                                                            Carol Bagley Amon
                                                            United States District Judge